554 S.E.2d 435

The STATE, Respondent,

v.

Anya Lafay BELL, Appellant.

No. 3397.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2001.
Decided Oct. 29, 2001.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Robert E. Bogan, all of Columbia; and Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

HOWARD, Judge:

Anya Lafay Bell was convicted of possession of crack cocaine and possession of crack cocaine with intent to distribute. The trial court sentenced Bell to six years imprisonment for possession of crack cocaine with intent to distribute and one year concurrent for the possession charge. On appeal, Bell argues the State improperly referred to her post-arrest silence during cross-examination, thereby warranting a mistrial. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

On March 12, 1999, a search warrant was issued for Bell's apartment. When the police arrived at the apartment, no one was home and the front door was open. The police searched the apartment and found a small bag of powder cocaine lying on the kitchen counter. They also found a plastic bag full of crack cocaine rocks in a pocketbook located in one of the bedrooms. The pocketbook contained a driver's license and other types of cards identifying Bell as the owner of the pocketbook.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Bell was arrested approximately one week after the search of her apartment. At trial, Bell testified the drugs found in her apartment were not hers. She testified that her boyfriend, Darrell Grant, sometimes stayed in her apartment and that he sold and used drugs. Bell also stated Grant had been in her apartment by himself on the day of the search.

During the State's cross-examination of Bell, the State asked Bell how police had responded to her story that the drugs belonged to her boyfriend. Bell answered that the police had not asked and she had not told them. Defense counsel objected to the State's reference to Bell's post-arrest silence, and the trial court sustained the objection, giving a curative instruction. However, when cross-examination resumed, the State again tried to impeach Bell's testimony by attempting to show that she had not told the story to her family. Although Bell responded that she told several family members, defense counsel again objected to this line of questioning on the basis that it was another improper reference to her post-arrest silence. This time the trial court overruled the objection and allowed the testimony.

Bell moved for a mistrial, contending the trial court erred by allowing the State to attempt to comment upon her post-arrest silence. The trial court denied the motion, and Bell was found guilty of all charges. This appeal followed.

## LAW/ANALYSIS

Bell contends the trial court erred by allowing the State to question her regarding her post-arrest silence.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court ruled the prosecution could not attempt to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to tell the story after receiving *Miranda*[2] warnings. The Court held "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619, 96 S.Ct. 2240. The Court noted

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Miranda* warnings offer an implicit assurance to an arrested person that his silence will carry no penalty and that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. 2240.

In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court clarified the rule set forth in *Doyle.* Weir was arrested on charges of intentional murder stemming from a stabbing in a nightclub parking lot. At his trial, Weir took the stand in his own defense and admitted stabbing the victim, but claimed that he acted in self-defense. This was the first occasion Weir offered his version of the stabbing. The prosecutor cross-examined Weir as to why he had failed to offer this explanation when he was arrested. The jury ultimately convicted Weir of first-degree manslaughter.

On appeal, the Sixth Circuit Court of Appeals held Weir was denied due process when the prosecutor used his post-arrest silence for impeachment purposes. *Weir v. Fletcher*, 658 F.2d 1126 (1981), *rev'd,* 455 U.S. 603, 102, S.Ct. 1309, 71 L.Ed.2d 490 (1982). The court concluded that Weir could not be impeached by his post-arrest silence even if no *Miranda* warnings were given, stating "an arrest, by itself, is governmental action which implicitly induces a defendant to remain silent." *Id.* at 1131.

The Supreme Court reversed, noting unlike the defendant in *Doyle,* there was no evidence that Weir received any *Miranda* warnings during the period of his post-arrest silence. *Fletcher*, 455 U.S. at 603, 102 S.Ct. 1309. The Court found that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Id.* at 607, 102 S.Ct. 1309.

In another post-*Doyle* case, the Supreme Court reiterated that the *Doyle* rule

rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. The "implicit assurance" upon

which we have relied in our *Doyle* line of cases is the right-to-remain-silent component of *Miranda*. Thus, the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no *Miranda* warnings are given. Such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty.

*Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citations omitted).

In the present case, there is no evidence in the record that Bell ever received *Miranda* warnings, and we will not presume the warnings were given at the time of arrest. *See United States v. Cummiskey*, 728 F.2d 200, 205 (3rd Cir.1984) ("Although nothing in the *Weir* record indicated the time Miranda warnings were given, the Supreme Court did not presume that the warnings were given at the time of arrest. Accordingly, we do not believe that we are authorized to engage in such a presumption." (citation omitted)). Although there was testimony that Bell was arrested approximately one week after the search of her apartment, her arrest alone is insufficient to implicitly induce Bell to remain silent. *See Fletcher*, 455 U.S. at 603, 102 S.Ct. 1309 . Therefore, we find no due process violation occurred as a result of the State's cross-examination of Bell. The decision of the trial court is

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.